IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
     v.                     )   Criminal No. 08-285
                            )
ANTHONY JOHNSON, JR.        )


O P I N I O N

DIAMOND, D.J.

On May 13, 2009, a grand jury returned a three-count superseding indictment against Anthony Johnson, Jr., ("defendant") charging him with possession with intent to distribute 5 grams or more of crack cocaine on August 23, 2007 (Count One) and on March 5, 2008 (Count Two), both in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); and at Count Three with carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of a drug trafficking crime, on March 5, 2008, in violation of 18 U.S.C. §924(c)(1)(A)(i).[1]

Currently pending before the court are fifteen pretrial motions filed by or on behalf of defendant. The government filed an omnibus response to all of defendant's motions and a motions hearing was held on December 1, 2009.

---

[1]    The original two-count indictment in this case was returned on July 30, 2008, and charged defendant at Count One with possession with intent to distribute 5 grams or more of crack cocaine on March 5, 2008, and at Count Two with carrying a firearm during and in furtherance of a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime on that same date.

At the motions hearing, Sergeant Robert Sealock of the Aliquippa Police Department testified as to two separate incidents occurring on August 23, 2007, and March 5, 2008, that resulted in the pending charges against defendant. Sealock's testimony, which the court finds wholly credible, is briefly summarized as follows.

Around 12:20 a.m. on August 23, 2007, Sealock was on routine patrol with another officer in a marked vehicle when he initiated a traffic stop of a gold, four-door Buick sedan that had pulled in front of his patrol unit. The bases for the stop were that the vehicle had tinted windows precluding vision into the interior and also that it was blaring loud music.[2] While approaching the vehicle, Sealock through the open side window was able to observe the driver making a furtive movement, specifically, leaning over towards the passenger side of the vehicle.

Sealock recognized defendant as the driver, having become familiar with him from numerous past incidents defendant had had with the police in Aliquippa, including several involving firearms. Incident Reports from these previous encounters were admitted as Government Exhibits 1, 3, 4 & 5. Because of this familiarity, Sealock had concerns about his safety and as to whether defendant may have been armed.

---

[2] Sergeant Sealock testified that defendant was charged in state court with disorderly conduct because of the loud music and with violating §4524(e) of the Pennsylvania Motor Vehicle Code, which prohibits the operation of a vehicle with "any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa. C. S. A. §4524(e).

AO 72
(Rev. 8/82)

Sealock testified that defendant appeared extremely nervous and that he was sweating and stuttering. Defendant was unable to produce a valid driver's license, only a picture identification card. Sealock observed an open box of sandwich baggies on the floor of the passenger side of the vehicle, which in light of his training and experience he knew to be used sometimes in the packaging of narcotics.

Defendant was asked to exit the vehicle and Sealock conducted a pat-down search. While conducting the search, Sealock felt a large bulge in defendant's pocket which Sealock initially thought could be a weapon. Upon squeezing the bulge, Sealock knew immediately that the hard substance was crack cocaine based on his familiarity with what crack feels like. Sealock retrieved a large plastic baggy containing the crack cocaine and defendant was placed under arrest.

Sealock also testified as to the events occurring on March 5, 2008, which underlie the charges set forth at Counts Two and Three of the Superseding Indictment. Around 2:05 a.m. on March 5, 2008, Sealock, while responding to a call for back-up on an unrelated traffic stop, observed an Oldsmobile Alero pass a pick-up truck in a no-passing zone. Sealock activated his lights and siren in order to get the Alero to move out of his way so he could get to the back-up site. The Alero would not move and instead accelerated. Sealock decided to follow it and observed the Alero run two stop signs. The Alero eventually pulled over and Sealock nudged it with his police car.

The driver exited the vehicle and attempted to flee.  Sealock immediately recognized the driver as defendant and observed that defendant had put his right hand behind his back.  When defendant ignored Sealock's commands to show his hands, Sealock grabbed him and threw him to the pavement.

After a pat-down of defendant, Sealock looked inside the vehicle and observed in plain view a plastic baggy of suspected crack cocaine on the driver's side floor mat.   The suspected crack was photographed.  Out of caution, Sealock decided to obtain a search warrant for the vehicle, which was towed and impounded pending the obtaining and execution of the search warrant.

After the search warrant was obtained, Sealock conducted a search of the vehicle at the garage where it had been towed. Among the items seized were the baggy of suspected crack cocaine located on the driver's side floor mat in plain view and a 9mm semi-automatic handgun, fully loaded with one round in the chamber, located directly under the driver's seat.

1.   **Motion to Suppress Evidence (Doc. #93)**

Defendant has filed a motion to suppress all evidence seized from his person and vehicle following the traffic stops on August 23, 2007, and March 5, 2008.

As to the August 23, 2007, traffic stop, defendant seeks suppression of all evidence seized from his person and vehicle on the following grounds: (1) lack of reasonable suspicion for the pat-down search; and, (2) the pat-down search conducted by the

officer "exceeded the purpose of a lawful pat down search."
Defendant's arguments are without merit.

In <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968), the United States
Supreme Court held that a warrantless seizure based on less than
probable cause can be constitutionally permissible "where a police
officer observes unusual conduct which leads him reasonably to
conclude in light of his experience that criminal activity may be
afoot and that the person with whom he is dealing may be armed and
presently dangerous ...." Under those circumstances, the officer
"is entitled for the protection of himself and others in the area
to conduct a carefully limited search of the outer clothing of
such persons in an attempt to discover weapons which might be used
to assault him." <u>Id.</u>

In outlining the contours of a permissible <u>Terry</u>-stop, "[t]he
officer need not be absolutely certain that the individual is
armed; the issue is whether a reasonably prudent man in the
circumstances would be warranted in the belief that his safety or
that of others was in danger." <u>United States v. Yamba</u>, 506 F.3d
251, 255 (3d Cir. 2007) <u>quoting</u> <u>Terry</u>, 392 U.S. at 27. "The
police officer must be able to point to specific and articulable
facts which, taken together with rational inferences from those
facts, reasonably warrant the intrusion." <u>Id.</u> at 21. When
determining whether a stop is justified, "the court must view the
circumstances surrounding the stop in their entirety, giving due
weight to the experience of the officers." <u>Yamba</u>, 506 F.3d at 255
<u>quoting</u> <u>United States v. Rickus</u>, 737 F.2d 360, 365 (3d Cir.1984).

Here, Sergeant Sealock was able to identify specific and articulable facts which justified the pat-down search of defendant for a weapon. In particular, Sealock testified as to numerous other incidents of which he was aware of defendant's prior involvement with the police, several of which involved firearms. In addition, Sealock observed in plain view in the vehicle a box of plastic baggies which in his experience sometimes are used to package narcotics. Finally, Sealock also noticed defendant's furtive movement of leaning over toward the passenger side of the vehicle as Sealock approached. Viewing these circumstances in their entirety, Sealock was justified in believing defendant may have been armed and dangerous and a protective pat-down of defendant for a weapon was warranted for officer safety.

The court likewise finds no merit to defendant's argument that the officer exceeded the scope of a lawful pat-down. Specifically, defendant contends that the purpose of the protective pat-down search was limited to a search for a weapon and that the seizure of crack cocaine exceeded the scope of the warrantless search.

In <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 373 (1993), the Supreme Court held that police officers may seize non-threatening contraband detected during a protective pat-down search "so long as the officers' search stays within the bounds marked by <u>Terry</u>." In <u>Yamba</u>, <u>supra</u>, the Court of Appeals for the Third Circuit defined the scope of a "plain feel" search under <u>Dickerson</u> and determined that the proper inquiry "is not the immediacy and

AO 72
(Rev. 8/82)

certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge, but rather what the officer believes the object is by the time he concludes that it is not a weapon." Yamba, 506 F.3d at 259.

When determining whether the scope of a particular Terry-search was proper, the areas of focus should be whether the officer had probable cause to believe an object was contraband before he knew it not to be a weapon and whether he acquired that knowledge in a manner consistent with a routine frisk. Id. If the officer develops probable cause to believe, given his training and experience, that an object is contraband before he eliminates the possibility it is a weapon, he may lawfully perform a more intrusive search, or if he discovers contraband, he may seize it. Id. "If, however, the officer 'goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.'" Id., quoting Dickerson, 508 U.S. at 373.

Here, under the totality of the circumstances, the court is satisfied that Sergeant Sealock had probable cause to believe that the object he felt in defendant's pocket was contraband at the same moment or before he determined it was not a weapon. As in Yamba, Sealock's belief that the object he felt was crack cocaine "was reached quickly and upon minimal manipulation" consistent with a routine Terry-frisk. Yamba, 506 F.3d at 260. Based upon Sealock's experience and training, he was able to identify the object as contraband within the bounds of Terry.

The court is convinced that the pat-down search of defendant was justified under the circumstances and did not exceed the scope of a lawful <u>Terry</u>-frisk.   Accordingly, defendant's motion to suppress evidence seized on August 23, 2007, will be denied.

Defendant also seeks suppression of the evidence seized following the traffic stop on March 5, 2008, on the following grounds: (1) there was no probable cause for the search warrant; and, (2) the search warrant lacked specificity.[3]  These challenges also lack merit.

As an initial matter, the court notes that a search warrant likely was not required in this case in the first instance, as Sealock observed in plain view a baggy which, through his training and experience, he believed to contain crack cocaine, which in itself would have been sufficient to justify the seizure of that baggy as well a search of the interior of the vehicle under the automobile exception to the warrant requirement.   <u>See United States v. Burton</u>, 288 F.3d 91, 100-01 (3d Cir. 2002).

Nevertheless, under an abundance of caution, a search warrant for the vehicle was obtained.   A copy of the search warrant application and affidavit of probable cause prepared by Sealock

---

[3] Defendant also raises challenges regarding the security of the vehicle prior to the obtaining of the search warrant and as to the "chain of custody" of the vehicle and the evidence discovered therein.   However, as the government points out, these issues do not allege violations of defendant's constitutional rights and more properly are trial issues going to admissibility and/or weight of the evidence.   The government states that it will present evidence at trial establishing both the security of the vehicle and the chain of custody of both the vehicle and the evidence found therein.

was admitted at the motions hearing as Government's Exhibit 2.

Whether probable cause exists is to be determined by a practical and common sense approach.  Illinois v. Gates, 462 U.S. 213 (1983).  The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit before [the magistrate], including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id. at 238-39.

In Massachusetts v. Upton, 466 U.S. 727 (1984), the Supreme Court emphasized that the reviewing court is not to conduct a "de novo probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the magistrate's finding of probable cause."  Thus, the warrant is to be upheld as long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place.  Id.

Upon review of the application and affidavit, the court is satisfied that there was a "fair probability that contraband or evidence of a crime" would be found in the vehicle.  The affidavit sets forth the events of March 5, 2008, which led to the traffic stop of the Alero and the arrest of defendant.  Sealock noted his observation of the plastic baggy of suspected crack cocaine on the floor of the driver's side of the vehicle in plain view.  Finally, Sealock detailed his experience as a police officer and his training in detecting controlled substances.  This evidence, when

AO 72
(Rev. 8/82)

viewed as a whole, clearly constitutes a "substantial basis" for a "fair probability" that contraband would be found in the vehicle.

Defendant also alleges that the search warrant failed to provide a specific description of the items to be searched for and seized because it failed to refer specifically to a "plastic baggy of suspected crack cocaine."

General warrants are prohibited by the Fourth Amendment, which requires that a search warrant describe the things to be seized with sufficient particularity and be no broader than the probable cause upon which it is based. Zimmerman, 277 F.3d at 431-32. For a search warrant to be invalidated as general, it must vest the executing officers with unbridled discretion to conduct an exploratory rummaging through the defendant's possessions in search of criminal evidence. United States v. $92,422.57, 307 F.3d 137, 148-49 (3d Cir. 2002). To determine whether a search warrant is overbroad, the court must compare the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit. In re Impounded Case (Law Firm), 840 F.2d 196, 200 (3d Cir. 1988).

Here, the search warrant identifies as the items to be searched for and seized "any and all illegal controlled substances, contraband, fruits of a crime or any other items criminally possessed." Government Exhibit 2. This language is more than specific enough to justify the search for, and seizure of, the baggy of suspected crack cocaine, an "illegal controlled

substance," as well as the firearm that also was seized from the vehicle, as defendant did not have a license to carry a firearm and therefore "criminally possessed" it.

The search warrant in this case was supported by probable cause and set forth with sufficient particularity the items to be searched for and seized. Accordingly, defendant's motion to suppress the evidence seized on March 5, 2008, pursuant to that warrant will be denied.


2.    **Motion for Evidentiary Hearing (Doc. #91 & Doc. #97)**

Defendant has filed a motion for an evidentiary hearing[4] pursuant to Franks v. Delaware, 438 U.S. 154 (1978).[5]  The sole basis for this motion is that the affidavit of probable cause submitted in support of the issuance of the search warrant for defendant's vehicle on March 5, 2008, included the statements that the affiant "observed a plastic baggy of suspected crack cocaine on the drivers floor of the Alero in plain view" and that the "[o]fficers did photograph suspected crack." Defendant alleges that he was not provided a copy of any photograph of crack in the

---

[4]    Although the record contains two motions for evidentiary hearing (Document #91 and Document #97), the documents at both docket numbers are identical.

[5]    In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Id. at 155-56.

AO 72
(Rev. 8/82)

Alero, raising a question as to the very existence of any photograph, and, therefore, creating the need for a <u>Franks</u> hearing to determine whether the affiant knowingly and intentionally stated that such a photograph existed if it did not and whether the existence of a photograph was necessary to the finding of probable cause.

However, subsequent to the filing of defendant's motion, the government obtained and turned over to defendant copies of photographs of the suspected crack on the floor of the Alero, proving their existence. In fact, three different photographs showing the suspected crack cocaine on the driver's side floor were introduced in evidence at the motions hearing as Government Exhibits 6, 7 and 8. As the sole basis underlying defendant's motion is the allegation that the affidavit contained a false statement as to the existence of any photographs, a <u>Franks</u> hearing is unnecessary, and the motion will be denied.

3.   **Motions to Dismiss (Doc. #57 and Doc. # 92)**

Defendant has filed a *pro se* motion to dismiss indictment (Document #57), a motion that his counsel incorporated by reference in a second motion to dismiss indictment (Document #92). Both of these motions essentially raise the same issues.

Defendant seeks dismissal of the indictment for the following reasons: (1) violation of the Speedy Trial Act, 18 U.S.C. §3161(b), because the original indictment was not filed within 30 days of the filing of the criminal complaint; (2) Count III of the

superseding indictment charging him with carrying a firearm during and in relation to a drug trafficking crime is duplicitous; (3) the evidence is insufficient to establish "carrying a firearm during and in relation to a drug trafficking crime" or "possessing a firearm in furtherance of a drug trafficking crime" but instead shows mere presence of a firearm; and, (4) the government's filing of a superseding indictment was vindictive.

Defendant first seeks dismissal of the indictment under the Speedy Trial Act. 18 U.S.C. §3161(b) requires that an information or indictment charging an individual with an offense shall be filed within 30 days from the date on which the defendant was arrested or served with a summons in connection with such offense. Defendant contends that this provision was violated because he was arrested on May 15, 2008, but was not indicted until July 30, 2008.

The court finds that there was no Speedy Trial violation in this case. Defendant was arrested on May 15, 2008, by Aliquippa Police on state charges stemming from an unrelated shooting incident occurring that day. Upon learning of the state charges, federal agents filed a federal criminal complaint on May 16, 2008, charging defendant with firearms and drug offenses stemming from the March 5, 2008, traffic stop of defendant's vehicle. The federal arrest warrant issued in conjunction with the federal criminal complaint was lodged as a detainer at the Beaver County jail.

It is well-settled that when a defendant is in state custody at the time a federal criminal complaint, arrest warrant and detainer are filed, the time limitations of the Speedy Trial Act are not implicated until the defendant is either taken into federal custody for prosecution on the federal charges or indicted on those charges. See United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995) cert. denied 116 S.Ct. 266 (1995); United States v. Shahryar, 719 F.2d 1522, 1524-25 (11th Cir. 1983); United States v. Stevens, 2002 WL 31111779 (E.D. Pa., Sept. 19, 2002).

Accordingly, because defendant remained in state custody after the filing of the federal criminal complaint, arrest warrant and detainer, the time provisions of the federal Speedy Trial Act did not begin to run until his indictment on July 30, 2008, and no violation of that Act occurred in this case.

Defendant next argues that Count Three of the superseding indictment is "duplicitous in that it criminalizes two separate and distinct offenses, namely, carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of a drug trafficking crime."

Count Three of the superseding indictment charges defendant with violating 18 U.S.C. §924(c)(1)(A)(i) and provides in pertinent part:

> On or about March 5, 2008, ... defendant ... did knowingly carry a firearm ... during and in relation to a drug trafficking crime ... and did knowingly possess said firearm in furtherance of said drug trafficking crime.

Defendant argues that this count is duplicitous because it charges two separate offenses in the same count. See, e.g., United States v. Savoires, 430 F.3d 376 (6th Cir. 2005); United States v. Combs, 369 F.3d 925 (6th Cir. 2004).

Duplicity is the improper joining of distinct and separate offenses in a single count. United States v. Root, 585 F.3d 145, 150 (3d Cir. 2009). The purposes of the prohibition against duplicity include: (1) avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another; (2) avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and (5) protecting against double jeopardy in a subsequent prosecution. Id. at 154.

Although the Court of Appeals for the Third Circuit has not yet had occasion to address the issue of whether §924(c) creates two separate offenses or a single offense, other circuit courts have. While the Sixth Circuit has found that §924(c) creates two separate offenses, Savoires and Combs, supra, the Ninth Circuit held in United States v. Arreola, 467 F.3d 1153, 1159 (9th Cir. 2006), that §924(c) does not create two separate offenses, but instead "identifies two ways in which a defendant could violate §924(c)."

This court is persuaded by the extensive analysis conducted by the Arreola court and agrees that §924(c) defines a single

AO 72
(Rev. 8/82)

offense with different means by which a defendant could violate it, i.e., carrying or possessing. Accordingly, because §924(c) sets forth disjunctive theories of liability for a single offense, the superseding indictment is not duplicitous in raising the theories conjunctively in a single count. See United States v. Stewart, 2009 WL 2149603 (N.D. Ill., July 17, 2009).

Moreover, even if defendant had raised a valid duplicity claim, the remedy would not be dismissal of the indictment where appropriate clarifying jury instructions can redress any concerns over a potentially duplicitous indictment. Id. Accordingly, defendant's motion to dismiss Count Three of the superseding indictment for duplicity will be denied.

Defendant's third argument in support of dismissal is that the government's evidence "at best" only will show the mere presence of a firearm in the vehicle that defendant was operating on March 5, 2008, which is insufficient to prove carrying "during and in relation to", or possession "in furtherance of" a drug trafficking offense. See United States v. Sparrow, 371 F.3d 851 (3d. Cir. 2004)(mere presence of a firearm is not enough under §924(c); government is required to prove that possession actually furthered drug trafficking offense).

Sufficiency of the evidence is not a proper basis for seeking dismissal of the indictment prior to trial. The grand jury found probable cause to support the §924(c) charge set forth at Count Three of the superseding indictment, and it is for a jury to determine whether the evidence is sufficient to support a finding

of guilt beyond a reasonable doubt as to that count, not for the court before the government has had an opportunity to present its case. Moreover, based upon the government's recitation of the evidence it intends to introduce at trial, the court is satisfied that there is more than sufficient evidence to submit to the jury the question of whether defendant carried the firearm during and in relation to a drug trafficking crime or possessed it in furtherance of a drug trafficking crime.

Finally, defendant argues that the superseding indictment should be dismissed for vindictive prosecution. Specifically, defendant accuses the government of filing the superseding indictment, which added a count for the incident occurring on August 23, 2007, only because defendant refused to plead guilty to the original indictment. The court finds this accusation to be baseless.

Here, the government has offered a legitimate explanation as to why the August 23, 2007, drug count was added to the superseding indictment. Specifically, the current Assistant United States Attorney, who took over the case from another assistant who had retired, has stated that the count subsequently was added after the state charge arising from that incident was dismissed when the officer failed to appear because he was under the mistaken impression that that charge also had been referred for federal prosecution.

Moreover, "'the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient

to warrant a presumption that subsequent changes in the [indictment] are unjustified." <u>United States v. Winkleman</u>, 180 Fed. Appx. 397, 400 (3d Cir. 2006) <u>quoting</u> <u>United States v. Goodwin</u>, 457 U.S. 368, 382-83 (1982). Indeed, "just as a prosecutor may forego legitimate charges already brought in an effort to save the time and expense of trial, [he] may [also] file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." <u>Goodwin</u>, 457 U.S. at 380.

Here, the government has offered a legitimate rationale for adding an additional count to the superseding indictment, and the fact that the count was added after the defendant refused to accept a plea deal to the original indictment is insufficient to presume vindictiveness. Accordingly, defendant's motion to dismiss for vindictive prosecution will be denied.


4.    **Motion for Brady Information (Doc. #83)**

Defendant has filed a discovery motion seeking 21 specific types of evidence which defendant believes constitute exculpatory and/or impeachment evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny.

Generally, governmental disclosure of evidence in criminal cases is governed by Fed.R.Crim.P. 16(a)(1). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1), "with some additional material being

discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." <u>United States v. Ramos</u>, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act (18 U.S.C. §3500) and materials available pursuant to the "<u>Brady</u> doctrine." <u>Id</u>.

The government has acknowledged its responsibilities and obligations under Rule 16(a), the <u>Brady</u> doctrine and the Jencks Act and has indicated that it already has complied, or intends to comply, with those requirements. However, the government objects to certain specific requests as outside the scope of Rule 16 or <u>Brady</u>. Specifically, the government objects to defendant's request for the names and addresses of the government's cooperating witnesses, the names and "current whereabouts" of "witnesses" that the government does not intend to call at trial, and "records" maintained by law enforcement agencies pertaining to "proactive" cooperating witnesses as well as "agency files" pertaining to cooperating witnesses. Because these requests do not fall within the ambit of Rule 16, the <u>Brady</u> doctrine, or the Jencks Act, defendant's motion will be denied as to those requested materials.

As the government is cognizant of its obligations under Rule 16 and has stated its intent to comply with the dictates of that rule, the discovery motion will be granted in part and denied in part, and the following order will be entered:

  1) The government shall disclose all <u>Brady</u> exculpatory material forthwith;

2)    The government shall disclose all <u>Brady</u> impeachment
      material and Rule 16(a) material no later than ten days
      prior to trial;

3)    The government disclose all Jencks material in
      accordance with 18 U.S.C. §3500(b), but with
      encouragement to disclose such material no later than
      ten days prior to trial.

4)    To the extent defendant requests information not
      discoverable under Rule 16, <u>Brady</u> or the Jencks Act, the
      motion will be denied.

5.    **<u>Motions for Discovery (Doc. #84 and #96)</u>**

Defendant has filed two additional motions for discovery
asking for disclosure of more specific items.   The first of these
motions (Document No. 84) asks for the following: (1) a photograph
of the plastic baggy on the floor of the Alero operated by
defendant on March 5, 2008; (2) towing records relating to the
March 5, 2008, impoundment of the Alero; (3) procedures of the
Aliquippa Police relating to impounding vehicles; and (4) all drug
lab testing reports relating to the items seized from the Alero on
March 5, 2008.

The government does not object to defendant's discovery
requests and has indicated that it already has disclosed, or will
disclose, all of the materials requested in the motion.
Accordingly, defendant's first discovery motion will be granted.

Defendant's second motion for discovery (Document No. 96)
asks for the following specific items: (1) all chain of custody
documents relating to the March 8, 2008, towing and impoundment of
the Alero; (2) all dispatch records of the Aliquippa Police

relating to the March 5, 2008, pursuit and stop of the Alero; and,
(3) names and addresses of any and all employees of Junak's Towing
that had any contact with the Alero.

Defendant's second discovery motion will be granted in part
and denied in part.    To the extent the motion seeks chain of
custody documents, the motion will be granted, and the government
has stated that it already has provided those documents to
defendant.

To the extent defendant seeks dispatch records relating to
the March 5, 2008, incident, Sergeant Sealock of the Aliquippa
Police testified at the motions hearing that such records are
maintained only for a short period of time and that by the time of
defendant's request the records from March 5, 2008, no longer
existed.    As these records are unavailable, defendant's request
will be denied.

Finally, defendant's request for the names and addresses of
any employees at Junak's Towing who had contact with defendant's
Alero also will be denied, as the requested information is beyond
the scope of pretrial discovery because it seeks pretrial
disclosure of the names and addresses of potential government
witnesses.    See United States v. Addonizio, 451 F.2d 49, 62 (3d
Cir. 1972) (government is not automatically required to disclose
the names of its witnesses in non-capital cases).


6.    **Motion for Disclosure of Test Results & Expert Reports (Doc. #85)**
Defendant has filed a motion for disclosure of test results

and expert reports[6] pursuant to Fed. R. Crim. P. 16(a)(1)(F) and (G).  Defendant is entitled to such disclosure under Rule 16 and the government has indicated that it already has disclosed all lab reports to defendant.  Accordingly, defendant's motion will be granted.

7.  **Motion for Early Disclosure of Jencks Materials (Doc. #86)**

Defendant has filed a motion requesting early disclosure of Jencks Act material.

The Jencks Act, 18 U.S.C. §3500(b), requires the government to disclose prior recorded statements of its witnesses, when related to the subject matter of their testimony, after each witness testifies on direct examination.  United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001).  According to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

There is no authority by which courts can order the government to provide Jencks Act statements prior to the time a witness has testified on direct examination at trial.  Accordingly, defendant's motion for early disclosure of Jencks Act

_____

[6]  The government has placed defendant on notice that it intends to call an expert witness on the issues of possession with intent to distribute and the nexus between firearms and drug trafficking.

materials will be denied.  However, the court's order will encourage the government to provide defendant with Jencks Act materials ten days prior to trial.

### 8.   **Motion To Preserve Evidence (Doc. #87)**

Defendant has filed a motion requesting that the government be ordered to preserve all evidence in this case.  The government has indicated that all evidence is being preserved and is available to defendant for inspection.  The motion will be granted.

### 9.   **Motion for Notice of 404(b) Evidence (Doc. #88)**

Defendant has filed a motion to compel the government to provide written notice of uncharged misconduct evidence.

Fed.R.Evid. 404(b) permits the admission of evidence of other crimes, wrongs or acts for certain enumerated purposes, provided that, upon request by the accused, the government shall provide reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial.  In order to be admissible under Rule 404(b), (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rules 401 and 402; (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).

The government has acknowledged its responsibility to provide advance notice of the general nature of any other crimes, wrongs or acts it intends to offer at trial but also states that it has not yet identified the specific bad acts it may seek to introduce at trial. The government proposes that it be permitted to provide notice under Rule 404(b) ten days prior to trial. The court believes that the government's proposal is reasonable. Accordingly, defendant's motion will be granted and an order will be entered requiring the government to provide notice of the general nature of any Rule 404(b) evidence it intends to offer no later than ten days prior to trial.

To the extent defendant seeks to have any Rule 404(b) evidence excluded from trial, such a request is premature, and the motion will be denied without prejudice in that regard.

### 10. **Motion to Retain Rough Notes (Doc. #89)**

Defendant has filed a motion to require federal and state agents and law enforcement officers to retain rough notes and writings which may constitute <u>Brady</u> or Jencks materials. The government has indicated that it is aware of its obligation to retain these materials pursuant to <u>United States v. Ramos</u>, 27 F.3d 65 (3d Cir. 1994), <u>Ammar v. United States</u>, 714 F.2d 238 (3d Cir. 1983) and <u>United States v. Vella</u>, 562 F.2d 275 (3d Cir. 1977). Accordingly, the motion will be granted and the court will enter an order requiring the government to retain any such materials.

To the extent that defendant's motion requests the present disclosure of the rough notes or writings of law enforcement agents, it will be denied, as there is no authority requiring the disclosure of such materials, unless of course, those materials constitute <u>Brady</u>, Rule 16 or Jencks Act evidence.

### 11. **Motion to Engage Expert Services (Doc. #94)**

Defendant has filed a motion to engage the services of experts. Defense counsel indicates that it is his belief that such services will cost in excess of $1,500.00 and therefore he seeks leave of court for the engagement of such experts.

Subsequent to the motions hearing in this case, defense counsel submitted the appropriate CJA 21 forms for the court's review and the court held a status conference with defendant and defense counsel to address defendant's request for expert services. Defendant's motion to engage expert services has been rendered moot and will be denied.

### 12. **Motion for Release of Grand Jury Transcripts (Doc. #95)**

Defendant has filed a motion requesting that the government be ordered to produce a copy of the transcripts of the grand jury proceedings in this case. Defendant's motion relates to the firearms count and the purported basis for the request is the differing language between Count Two of the original indictment, which charged him with carrying a firearm during and <u>in furtherance of</u> a drug trafficking crime, and Count Three of the

superseding indictment, which charges him with carrying a firearm during and <u>in relation to</u> a drug trafficking crime.  Defendant avers that he needs to review the grand jury transcripts in order to ascertain whether there was "prosecutorial abuse" underlying the changed language.

It is settled federal policy that the grand jury system requires secrecy of grand jury proceedings.  <u>See Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211, 218-19 (1979).  Federal Rule of Criminal Procedure 6(e) is intended to preserve secrecy by preventing the disclosure of matters that occur before a grand jury.  Secrecy is not absolute, however, and Rule 6(e) has built-in exceptions.

One such exception, which is set forth in Rule 6(e)(3)(E)(i), lifts the veil of secrecy where disclosure of grand jury transcripts is directed by a court "preliminary to or in connection with a judicial proceeding."  In balancing the secrecy requirement with the need for a grand jury transcript, the Supreme Court has held that the party seeking the transcript must show that the material he seeks is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy and that his request is structured to cover only the material that is needed.  <u>Douglas Oil</u>, 441 U.S. at 222.  Thus, the party seeking the transcript must set forth a "particularized" need for the disclosure.  <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 683 (1958).

Here, defendant has failed to demonstrate a particularized need for the grand jury transcript, nor has he identified any factor that would justify this court in exercising its discretion to order production of the grand jury transcripts.  As already noted, the government was within its discretion in pursuing a superseding indictment and the fact that the language of the §924(c) count was changed from carrying a firearm "in furtherance of" to "in relation to" a drug trafficking crime is insufficient to suggest any sort of prosecutorial abuse.  Accordingly, defendant's motion for production of the grand jury transcripts will be denied.

An appropriate order will follow.


_____
Gustave Diamond
United States District Judge

Date: January 27, 2010


cc:   Charles A. Eberle
      Assistant U.S. Attorney

      Thomas W. Brown, Esq.
      327 West Main Street
      Carnegie, PA 15106